# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMRE SOMOGYI,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. CV 16-8819-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## BACKGROUND

On October 9, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that he became disabled and unable to work on September 17, 2004. Plaintiff's claims were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") conducted a hearing on July 2, 2015, at which Plaintiff, his attorney, and a vocational expert ("VE") were

present. (Administrative Record ("AR") 33-79.) In a July 16, 2015 written decision that constitutes the Commissioner's final decision, the ALJ found that Plaintiff suffered from several severe impairments but retained the residual functional capacity ("RFC") to perform a restricted range of medium work. The ALJ further determined that Plaintiff's RFC did not preclude him from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff not disabled at any time from September 17, 2004 through the date of the ALJ's decision. (AR 22-28.)

**DISPUTED ISSUES**

1. Whether the ALJ's Step Two and Step Three findings are supported by substantial evidence.

2. Whether the ALJ's RFC assessment is supported by substantial evidence.

3. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

///

///

**DISCUSSION**

**1. The ALJ did not err at Step Two or Three.**

Plaintiff contends that the ALJ erred by failing to find that Plaintiff's migratory arthritis was a severe impairment, failing to discuss Plaintiff's migratory arthritis diagnosis at any step of the sequential evaluation, and failing to consider whether Plaintiff's migratory arthritis met or equaled Listing 14.09 of the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. (ECF No. 22 at 3-5.) For the following reasons, Plaintiff's contentions lack merit.

**a. The ALJ's failure to discuss Plaintiff's arthritis diagnosis**

The ALJ reviewed Plaintiff's medical records and found that Plaintiff had the following severe impairments: mechanical knee pain; lower extremity edema; and diabetes mellitus. (AR 24.) The ALJ found that Plaintiff's vertigo, headaches, obesity, hypertension, and hearing problems did not constitute severe impairments. (AR 25.) The ALJ stated that he considered the combined effect of each of Plaintiff's impairments, severe and non-severe, before reaching his determination that Plaintiff was not disabled. As Plaintiff correctly points out, the ALJ's decision does not discuss migratory arthritis.

In challenging the ALJ's omission, Plaintiff relies primarily upon a report from the Conejo Valley Medical Clinic dated March 19, 2010. (ECF No. 22 at 3 (citing AR 303).) An examination on that date revealed no erythema, no swelling, and a normal range of motion in Plaintiff's feet and knees. However, under "Additional Notes," the report included the following notation:

A/P: Migratory Arthritis

-- Ibuprofen 600 mg

-- labs.

(AR 303.) The only other mention of arthritis in the record is found in cursory references to "gouty arthritis" in records dated August 2014, September 2014, and April 2015. Each of these three reports includes a heading "Problem List/Past

Medical History," and among the nine or ten ailments listed under that heading is "Gouty arthritis NOS." (AR 312, 317, 322.) Critically, Plaintiff cites no treatment notes, physician opinions, or any other medical evidence concluding that Plaintiff's migratory arthritis caused any functional limitations. Indeed, an independent review confirms that the record contains no such evidence.

Although an ALJ must consider all of the evidence available in a claimant's case record, *see* 42 U.S.C. § 423(d)(5)(B), an ALJ is not required to discuss every piece of evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quotations omitted); *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) ("The [Commissioner] need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected.") (citations and internal quotation marks omitted).)

Plaintiff has not shown that the ALJ failed to consider significant probative evidence. The mere diagnosis of a disorder does not support a finding of disability, *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985), and an ALJ is not obligated to discuss medical opinions that include mere diagnoses but do not shed light on any specific work-related functional limitations stemming from such diagnoses. *See Castelblanco v. Colvin*, 2014 WL 3964950, at *10 (N.D. Cal. Aug. 13, 2014) (ALJ was under no obligation to specifically discuss and reject each diagnosis in the medical record where diagnoses were made without explanation of the effect of the impairment on claimant's functional limitations); *Dubek v. Astrue*, 2009 WL 1155226, at *4 (W.D. Wash. Apr. 29, 2009) (ALJ did not err by failing to discuss medical opinions that included mere diagnoses but did not shed light on any specific work-related functional limitations). Because the migratory arthritis diagnosis, standing alone, did not constitute probative evidence of Plaintiff's functional limitations, the ALJ's failure to specifically discuss it in his opinion was not error. *See Jones v. Berryhill*, 685 F. App'x 536, 537-38 (9th Cir. 2017) (ALJ did not err in failing to discuss medical records because, among other things, the

4

records "were not supported by an explanation or clinical findings); *Remick v. Astrue*, 2010 WL 3853081, at *10 (C.D. Cal. Sept. 29, 2010) (ALJ was not required to specifically address conclusory statements from the physician assistants that provided no supporting detail because they did not constitute significant probative evidence).

Furthermore, even if omitting discussion of the migratory arthritis diagnosis was error, it was harmless because Plaintiff points to nothing about that diagnosis that would alter the ALJ's ultimate disability determination.

Other than the diagnosis, the evidence that Plaintiff contends confirms the severity of his migratory arthritis consists of the following: (a) the February 2013 report of consultative examining physician Dr. Sohail K. Afra, who observed moderate swelling of Plaintiff's feet and ankles, an antalgic gait, and decreased range of motion in Plaintiff's lumbar spine; (b) the September 2013 report of treating physician Dr. Shilpa Jindani indicating that Plaintiff suffered from edema in his lower extremities; (c) evidence of vertigo; and (d) Plaintiff's self-reports of swelling and pain in his hands and feet, dizziness, and an inability to walk. (ECF No. 22 at 3 (citing AR 285-287, 293, 297, 302, 312, 317).) None of the foregoing evidence, however, compels the conclusion that the ALJ's assessment of Plaintiff's RFC was reversible error. The ALJ already considered the reports of Dr. Afra and Dr. Jindani, found Plaintiff's lower extremity edema to be a severe impairment, and adopted Dr. Afra's opinion regarding Plaintiff's RFC. (AR 24, 26.) With regard to Plaintiff's dizziness and vertigo, Plaintiff does not allege, and it does not appear from the record, that these symptoms are attributable to migratory arthritis. Moreover, the ALJ considered evidence of dizziness and vertigo and found that these conditions were controlled with medications, a finding that is confirmed by the record and which Plaintiff does not dispute. (AR 24.) As for Plaintiff's subjective complaints of debilitating pain rendering him unable to walk, the ALJ

explicitly considered and rejected them.[1] (AR 25-26.)

Because there is no medical evidence indicating that Plaintiff suffered from any functional limitation as a result of his migratory arthritis not already taken into account by the ALJ, consideration of that diagnosis would not have affected the ALJ's analysis of Plaintiff's disability claim. Accordingly, any error was harmless. *See Baker v. Berryhill*, 2017 WL 6525191, at *1 (9th Cir. Dec. 21, 2017) ("[E]ven if omitting discussion of this evidence was error, it would not amount to harmful error that affected the outcome of the ALJ's decision because this evidence is consistent with medical evidence the ALJ did discuss."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n. 2 (9th Cir. 2009) (ALJ's omission of spine, knee, and shoulder injuries was immaterial because the claimant "does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the RFC"); *LaDuke v. Colvin*, 2013 WL 1100188, at *8 (D. Or. Mar. 15, 2013) (ALJ's omission of diagnoses was harmless because there was no evidence that there were functional limitations caused by the specific diagnosis beyond those which the ALJ adopted).

### b. The ALJ's failure to find arthritis a severe impairment

At step two of the five-step sequential evaluation, the ALJ must determine whether the claimant has a severe, medically determinable impairment or combination of impairments. *See Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)). To determine whether or not an impairment or combination of impairments is severe, the ALJ must determine whether the impairments significantly limit a claimant's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a); *see Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). Basic work activities

---

[1] Plaintiff's contention that the ALJ erred in rejecting his subjective complaints is discussed separately below.

are the "abilities and aptitudes necessary to do most jobs," including, among others, (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; and (3) understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1521(b), 416.921(b)[2]; *Garcia v. Comm'r of Soc. Sec.*, 587 F. App'x. 367, 370 (9th Cir. 2014).

To begin with, a mere diagnosis does not establish a severe impairment. *Febach v. Colvin*, 580 F. App'x. 530, 531 (9th Cir. 2014). Nevertheless, assuming that the ALJ erred by failing to find migratory arthritis was a severe impairment, the error was harmless.

An erroneous failure to find a specific severe impairment is harmless if the claimant nonetheless prevails at Step Two, and all impairments – regardless of severity – are actually considered in all subsequent steps. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Here, the ALJ found that Plaintiff had severe impairments of mechanical knee pain, lower extremity edema, and diabetes mellitus, and consequently considered the limitations imposed by all of Plaintiff's impairments at the other steps of the sequential process. (AR 24-27.) As discussed above, Plaintiff has failed show that there were limitations uniquely associated with Plaintiff's migratory arthritis that were not already considered by the ALJ. Because the ALJ considered any limitations that might have been caused by Plaintiff's migratory arthritis during the

---

[2] Many of the relevant regulations were revised, recodified, or deleted after the date of the ALJ's decision. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (final rules effective Mar. 27, 2017); Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016) (final rules effective Jan. 17, 2017). All regulations cited herein are to the historical version of the regulation that was in effect on the date of the ALJ's decision.

remainder of the sequential evaluation process, any error at Step Two was harmless. *See Lewis*, 498 F.3d at 911 (failure to list bursitis as severe at step two was harmless error where ALJ considered any functional limitations imposed by the bursitis at step four); *Bowlin v. Colvin*, 2016 WL 5339591, at *11 (D. Or. Aug. 18, 2016) (any error in failing to include fibromyalgia as a severe impairment was harmless were claimant relied upon records that showed "only that a diagnosis was made and d[id] not speak to limitations beyond those already credited by the ALJ"), *report and recommendation adopted*, 2016 WL 5339578 (D. Or. Sept. 21, 2016); *Gallemore v. Colvin*, 2014 WL 5810327, at *2 (C.D. Cal. Nov. 7, 2014) (ALJ's failure to list claimant's back condition as a severe impairment was harmless error because ALJ considered any limitations that could be imposed by the back condition during the remainder of the sequential evaluation process).

### c. The ALJ's failure to find Plaintiff's impairments met Listing 14.09

Plaintiff contends that the ALJ should have considered whether Plaintiff's migratory arthritis met or equaled Listings 14.09A. (ECF No. 22 at 4-5.)

Plaintiff bears the burden of showing that he has an impairment that meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To "meet" a listed impairment, a claimant must establish that his condition satisfies each element of a particular listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to all of the criteria for the most similar listed impairment. *Tackett*, 180 F.3d at 1099-100 (quoting 20 C.F.R. 404.1526); *see Sullivan*, 493 U.S. at 531.

The ALJ concluded that Plaintiff's impairments "do not meet or equal any of the criteria set forth in any of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4." (AR 25.) The ALJ did not specifically address

Listing 14.09A. Assuming this failure was error, it was harmless because Plaintiff has not pointed to medical evidence supporting a conclusion that his impairments meet or equal that Listing.

Plaintiff's migratory arthritis diagnosis by itself does not dictate a finding that he is disabled. *Young v. Sullivan,* 911 F.3d 180, 181, 183-84 (9th Cir. 1990) (mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability); *Jones v. Comm'r of Soc. Sec.*, 2017 WL 2868451, at *5 (E.D. Cal. July 5, 2017) (fact that claimant was diagnosed with disorders that appear on a Listing is not sufficient to show that plaintiff meets or equals a Listing).

In order to be considered presumptively disabled under Listing 14.09A, the medical evidence must show the claimant suffers from persistent inflammation of, or persistent deformity of, one or more peripheral weight bearing joints resulting in the inability to ambulate effectively. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 14.09(A). Listing 1.00B2b defines an "inability to ambulate effectively" as an "extreme limitation of the ability to walk" and provides a non-exhaustive list of examples, including "the inability to walk without the use of a walker, two crutches or two canes," "the inability to walk a block at a reasonable pace on rough or uneven surfaces," and "the inability to carry out routine ambulatory activities, such as shopping and banking." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A, 1.00B2b.

Plaintiff has not demonstrated that his migratory arthritis rendered him unable to ambulate effectively. No physician found that Plaintiff's migratory arthritis – alone or in combination with any of his other impairments – met or equaled a listing. In an attempt to make the requisite showing of an inability to ambulate effectively, Plaintiff points to records purportedly documenting his "need to use crutches" and his inability to "even get around his home." (ECF No. 22 at 4-5.) The evidence Plaintiff cites, however, does not document either a medical need for an assistive device or a medical opinion about Plaintiff's ability to effectively ambulate. Instead, these records consist of notations recounting Plaintiff's

subjective complaints – namely, Plaintiff's reports that he was "unable to walk even a block without support" (AR 293), was "unable to walk even around the house" (AR 317), and had been using crutches for two weeks. (AR 302.)

Contrary to Plaintiff's suggestion, the record is devoid of medical evidence suggesting that he is unable to ambulate effectively. Dr. Jindani observed that Plaintiff's gait was within normal limits on September 24, 2013 and again on September 2, 2014. (AR 294, 318.) Although Dr. Jindani's report memorialized that Plaintiff was walking with crutches on August 25, 2014 (AR 323), it does not appear that Dr. Jindani ever prescribed or recommended crutches. Furthermore, Plaintiff was able to walk without them only one week later. (AR 318.) Even Dr. Afra, whose observation of an antalgic gait Plaintiff relies upon to support his claim, opined that Plaintiff was able to walk and stand six hours in an eight-hour day without an assistive device. (AR 285-289.)

For the foregoing reasons, Plaintiff has not presented substantial evidence proving he has an impairment that meets or equals a Listing. *See Gonzalez v. Colvin*, 2014 WL 1725797, at *1 (C.D. Cal. Apr. 29, 2014) (claimant failed to show she was unable to ambulate effectively where medical evidence showed she was diagnosed with arthritis, doctor recommended that she limit ambulation for two days, and another doctor found that claimant could perform a range of sedentary work, including two hours of walking/standing without need of an assistive device); *Graham v. Colvin*, 2014 WL 1328521, at *6 (W.D. Wash. Mar. 31, 2014) (no error in finding claimant did not meet Listing where there was no objective evidence of inability to ambulate effectively); *Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176 (C.D. Cal. 2011) (claimant failed to show she was unable to ambulate effectively where no physician provided an RFC assessment precluding walking, and where physician concluded claimant could walk four hours in an eight-hour day).

Finally, Plaintiff's attempt to demonstrate he met or equaled Listing 14.09A by relying upon his self-reports of symptoms and functional limitations lacks merit.

Neither Plaintiff's self-reported limitations nor Plaintiff's apparently optional use of crutches constitutes objective medical evidence of an inability to ambulate effectively. *See Hamilton v. Astrue*, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010) ("Plaintiff's self-reports of symptoms and functional limitations based on hip and joint pain cannot suffice to raise the severity of her related impairment to that of Listing 1.02A.").

### 2. The ALJ's RFC finding is supported by substantial evidence.

Plaintiff argues that the ALJ erred by finding he could perform the walking and carrying required by medium exertional work. (ECF No. 22 at 5.) The relevant evidence is as follows.

In making his RFC assessment, the ALJ credited the opinion of Dr. Afra. (AR 26.) Dr. Afra examined Plaintiff in February 2013 and found that Plaintiff had grip strength of 50-50-60 on the right and 60-60-60 on the left; normal peripheral pulses in the extremities; moderate swelling of the ankles and feet bilaterally; normal cervical, shoulder, elbow, wrist, hand, hip, knee and ankle ranges of motion; limited lumbar range of motion; a negative straight leg raise test; painful but full range of motion of the feet; and no joint deformities, crepitus, effusion, tenderness, or trigger points. (AR 287-288.) Plaintiff had full strength in the extremities, normal muscle bulk and tone, and an intact sensory examination. Although Plaintiff had an antalgic gait, he did not need or use an assistive device. (AR 288.) Plaintiff had a history of chronic intermittent vertigo and took medication as needed; edema of the ankle and feet; suspected metatarsalgia with mechanical-type knee pain; and a subjective history of hand swelling at times with no significant abnormality upon examination. (AR 288-89.) Dr. Afra opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours in an eight-hour day; did not need an assistive device; had no sitting limitation; could frequently perform postural and agility activities; and had no manipulative limitations. (AR 289.)

Dr. Afra's opinion was based upon independent clinical testing and examination, and constituted substantial evidence supporting the ALJ's RFC finding. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ found Dr. Afra's opinion to be consistent with the record. (AR 26.) For example, the ALJ noted that the objective medical findings were limited, and X-rays of Plaintiff's right knee and right foot were normal. Despite Plaintiff's history of lower extremity edema, he had a normal gait in September 2013. No edema was present at Plaintiff's April 2015 examination by his treating physician, and Plaintiff's back pain was treated with over-the-counter non-steroidal anti-inflammatory medication. (AR 26; *see* AR 271, 294, 295, 314, 318, 320.)

Plaintiff points to no medical evidence contravening Dr. Afra's opinion, and the record reveals none. Dr. Afra's opinion was consistent with that of state agency physician S. Amon, M.D., who reached an identical RFC assessment. (AR 104-105). Indeed, considering the conclusion of state agency physician J. Zheutlin, M.D., who opined that Plaintiff suffered from no severe physical impairment (AR 121), Dr. Afra's opinion was actually the most restrictive one in the record.

Plaintiff argues that the ALJ should have considered additional limitations stemming from his vertigo. (ECF No. 22 at 6.) The ALJ, however, found that Plaintiff's vertigo was controlled with medication, a finding that is supported by the record. (AR 24; *see* AR 66.) Otherwise, Plaintiff's claim is essentially based upon his subjective complaints and limitations. That is, citing evidence of edema and swelling, Plaintiff alleges that he was unable to walk around the house and required crutches. (ECF No. 22 at 5.) Citing swelling in his left hand, Plaintiff suggests that he would be unable to perform work that required "manipulation and handling." (ECF No. 22 at 5.) But the ALJ did not find Plaintiff's subjective complaints credible. As discussed below, the ALJ's credibility determination was not improper. Consequently, the ALJ was not required to include those subjective complaints in assessing Plaintiff's RFC.

### 3. The ALJ properly considered Plaintiff's subjective complaints.

Plaintiff argues that the ALJ failed to properly consider his subjective complaints about his symptoms and limitations. Specifically, Plaintiff contends that the ALJ improperly rejected his testimony that he was unable to stand or walk for an extended period of time, he needed crutches, and that he spent four to five hours a day lying down with his legs elevated. (ECF No. 22 at 7.)

Plaintiff appeared at the July 2, 2015 hearing using crutches. The ALJ observed that Plaintiff had initially appeared for a hearing five months earlier and at that time, he was not using crutches. Plaintiff explained that on the previous date he had not been experiencing pain. (AR 36.) Regarding the crutches, Plaintiff testified that he has used crutches since 2004 and he had been told to do so by "numerous doctors," including Dr. Jindani. (AR 45-46.)

Plaintiff testified that he suffers from constant pain typically in the range of seven to nine on a scale of one to ten, and that the pain moves from his hands, knees, feet, elbow, and neck. (AR 43-44, 70.) There have been times when Plaintiff has been confined to his bed or is unable to think clearly because of the pain. (AR 43, 48-49.) Plaintiff estimated that he could walk a block and a half with or without crutches, he could stand or walk for about 15 to 20 minutes at a time, and he could sit for about 35 to 45 minutes before needing to move. (AR 51-52, 61.) He estimated that he was able to lift "maybe three to five pounds," and had a limited ability to grasp things with his left hand. (AR 52-55.) Plaintiff explained that the pain in his feet prevented him from wearing shoes that cover his feet, so he wears only sandals. (AR 71.)

Plaintiff spent four to five hours a day lying down and he elevated his feet "all the time." (AR 52.) Plaintiff was able to grocery shop, make his bed, and take out the garbage. (AR 63-65.)

Plaintiff testified that the medicine prescribed to him for vertigo helps him, and he experiences no side effects. (AR 66.)

When asked about the periods during which he did not seek medical treatment, Plaintiff explained that there had been times when he had no medical insurance. (AR 38-39.)

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's subjective symptom statements must be "specific, clear and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).

Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *see generally* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The Commissioner does not allege that there was affirmative evidence of malingering, and therefore the ALJ was required to articulate specific, clear and convincing reasons for rejecting the alleged severity of Plaintiff's subjective symptoms. The ALJ's reasons for finding Plaintiff's subjective complaints not fully credible were sufficient to meet that burden.

First, the ALJ observed that Plaintiff "has seen treating physicians only infrequently for his allegedly disabling pain and dysfunction." (AR 26.) The ALJ highlighted the complete absence of treatment notes from 2011 and the sole treatment note from 2012. He then concluded that Plaintiff's failure to seek treatment was inconsistent with his alleged disability. (AR 26.)

Where a claimant complains about debilitating pain, an unexplained, or inadequately explained, failure to seek treatment may be the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ's characterization of Plaintiff's treatment as infrequent is borne out by the record. Plaintiff alleged disability since September 2004, yet the record contains no treatment notes at all until March 2010. Even after March 2010, Plaintiff sought treatment infrequently at most – once in April 2010, never in 2011, once in 2012, three times in 2013, twice in 2014, and once in 2015. (AR 26, 270-326.)

In an effort to explain his failure to seek treatment, Plaintiff offers the following:

> Within the written decision, the ALJ states that Mr. Somogyi was not credible because he had seen physicians "infrequently." (AR 26). Yet, he testified that he had periods of time without medical insurance. (AR 38-39).

(ECF No. 22 at 6-7.) At the hearing, Plaintiff testified only that he was uninsured at the time of hearing – that is, July 2, 2015 – and that he had last been insured approximately May 2014 to July 2014. (AR 39.) Plaintiff did not identify periods of

15

time between 2004 and 2014 when he was uninsured and his testimony does not account for the numerous years without any medical treatment. Indeed, Plaintiff obtained medical treatment at a time he allegedly was uninsured – namely, August and September 2014 (AR 317-24) – a fact that suggests that his decision when to seek medical care was not dependent on his insured status. This is not a case where the record establishes Plaintiff's lack of treatment was due to his inability to afford it. *Cf. Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("we have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it"). Accordingly, the ALJ properly relied on the fact that Plaintiff sought minimal medical treatment in making his credibility determination.

The ALJ also relied upon the conservative treatment provided by Plaintiff's treating physicians. As the ALJ noted, Plaintiff was prescribed only over-the-counter non-steroidal anti-inflammatory medication for his back pain, "suggesting that [Plaintiff]'s pain was not severe enough to warrant opioid medication or a referral to a specialist." (AR 26.) The record supports the ALJ's characterization of Plaintiff's treatment. It reveals that despite Plaintiff's allegedly constant debilitating pain, he often used only Ibuprofen to treat his pain, and in fact, there were times when Plaintiff took no pain medication at all. (*See* AR 293-295, 298, 302, 310, 315, 317, 319, 324.) Thus, the ALJ properly relied upon Plaintiff's conservative treatment as a basis for his credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (treatment with over-the-counter pain medication is sufficient to discount a claimant's testimony regarding severity of an impairment).

In addition, the ALJ considered the fact that no physician recommended a RFC as restrictive as Plaintiff's testimony. (AR 26.) As discussed above, Dr. Afra

and Dr. Amon both concluded that Plaintiff could perform medium exertional work, and Dr. Zheutlin concluded that Plaintiff had no functional limitations whatsoever. This was a legitimate basis for the ALJ's credibility determination. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (doctors' opinions finding claimant could perform a limited range of work supported ALJ's credibility determination).

Finally, the ALJ relied upon the minimal objective medical findings. Specifically, the ALJ noted that X-rays of Plaintiff's right knee and foot were normal, Plaintiff's gait was normal in September 2013, and there was no evidence of edema in April 2015. (AR 26.) So long as it does not form the sole basis for a credibility determination, the lack of objective medical evidence is a valid factor the ALJ can consider. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Finally, in his reply, Plaintiff reiterates that the ALJ erred by not crediting Plaintiff's testimony that he lies down four or five hours a day and elevates his legs and cites *Espinoza v. Colvin*, 2014 WL 2558926 (C.D. Cal. June 6, 2014). (ECF No. 26 at 2.) In *Espinoza*, the court found the ALJ's RFC assessment was not supported by substantial evidence because it failed to address the treating physicians' recommendations that the plaintiff elevate her legs to relieve symptoms caused by her edema. *Espinoza*, 2014 WL 2558926, at *1. *Espinoza* involved rejection of a treating physician's opinion in making a RFC assessment and is inapposite to Plaintiff's challenge to the ALJ's credibility determination. Plaintiff does not contend that any physician recommended that he elevate his legs, and the

record contains no such evidence. Unlike *Espinoza*, the ALJ here did not disregard the recommendation of a treating physician.

## ORDER

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 2/27/2018

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE